# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| CALVARY INDUSTRIES, INC., | : | Case No. 1:23-cv-1 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| JONATHAN K. WINTERS, JIM EPSTEIN, EVAN EPSTEIN, and THOR CUSTOM STEEL COATINGS, LLC, | : | |
| Defendants. | : | |

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND (Doc. 10)**

This civil case is before the Court on Plaintiff Calvary Industries, Inc.'s ("Calvary" or "Plaintiff") motion to remand (Doc. 10) and the parties' responsive memoranda (Docs. 12, 15).

## I.  BACKGROUND

### A.  Factual Background[1]

#### 1. *Calvary and Winters discuss developing a ceramic coating*

Calvary is a chemical manufacturing company in Butler County, Ohio. (Doc. 2 at ¶ 10). In early spring of 2018, Defendant Jonathan K. Winters ("Winters") and Calvary's Vice President and Director of Product Development, Chris Berger ("Berger"), began having conversations about an idea Winters had for a ceramic coating that Winters

---

[1] The facts are taken from the allegations in the Verified Complaint for Temporary, Preliminary, and Permanent Injunctive Relief and Damages, as filed in the Butler County Court of Common Pleas (Doc. 2) (the "Complaint").

believed would prevent steel from oxidizing during the hot stamping process used in manufacturing steel parts for automobiles (the "ceramic coating"). (*Id.* at ¶¶ 13, 14). At the time, Winters did not have a formula or any samples of this proposed coating; it was merely a concept. (*Id.* at ¶ 14). On October 9, 2018, Calvary hired Winters as a product developer and technical representative. (*Id.* at ¶ 15). Winters would perform two primary roles at Calvary: (1) work with Calvary's engineers, using Calvary's laboratory and equipment, to help develop the concept of the ceramic coating; and (2) generate sales for the ceramic coating and other Calvary chemicals. (*Id.* at ¶ 16).

2. *Calvary and Winters enter into an agent agreement*

In October of 2018, Calvary and Winters entered into an agreement (the "Agent Agreement"). (*Id.* at ¶ 17; *id.* at Ex. A, PageId 29-34). Under the Agent Agreement, for the first two years of the relationship, Winters would receive a 50% share of the gross profits from products that he helped develop and sell, with that percentage reduced to 31% after two years. (*Id.* at ¶ 17). The Agent Agreement also provided, in relevant part, that: any intellectual property developed during the relationship would belong to Calvary; Winters was not to disclose or use for his own benefit any confidential information "whether patentable or not"; and during and for 18 months immediately following the termination of Winters' agent status, he was not to solicit, offer to sell, or sell any products or provide any services that compete with or displace Calvary's products or services to customers who were provided Calvary products or services at any time during the 18 months preceding termination. (*Id.* at ¶ 18; *id.* at Ex. A, PageId 29-30).

Calvary invested thousands of dollars in new equipment and supplies, and devoted its other resources, including existing equipment and personnel, towards developing the ceramic coating. (*Id.* at ¶ 19). Although Winters performed some work towards developing the formula for the ceramic coating, the vast majority of work was performed by Berger. (*Id.* at ¶ 20). At most, Winters showed up to work at Calvary's facilities approximately five days per month. (*Id.* at ¶ 20). On those days, Berger would cease work on other projects and work side-by-side with Winters to develop the ceramic coating. (*Id.* at ¶ 21).

By spring of 2020, Winters was performing only limited work for Calvary; so, as permitted by the Agent Agreement, Calvary ceased paying Winters draws against future sales and instead paid him the agreed upon gross profits that were generated from the other products he worked on and sold. (*Id.* at ¶ 25). Berger continued to work on, and make key revisions to, the formula for the ceramic coating. (*Id.* at ¶ 26).

### 3. *Calvary and Thor pursue a joint venture*

In the summer or fall of 2020, Winters approached Jim Epstein ("Jim") and Evan Epstein ("Evan") about working with him on the ceramic coating. (*Id.* at ¶¶ 27, 30). In so doing, Winters disclosed the developments made at Calvary without Calvary's knowledge or consent, in violation of the Agent Agreement. (*Id.* at ¶ 31). Winters, Jim, and Evan, without Calvary, did not have the equipment or facilities to develop chemical compounds such as the ceramic coating. (*Id.* at ¶ 33).

In the fall of 2020, Jim called Berger and informed him that he was working with Winters on the ceramic coating, and asked about partnering with Calvary to develop and

produce it. (*Id.* at ¶ 34). Calvary was dismayed that Winters had disclosed confidential information about the coating to third parties in violation of the Agent Agreement, but was interested in working with Jim and Winters based on their connections at Nucor Steel ("Nucor"), a potential customer. (*Id.* at ¶ 35).

On December 30, 2020, Jim, Evan, and Winters formed Defendant Thor Custom Steel Coatings, LLC ("Thor") (collectively, "Defendants") as an Indiana LLC. (*Id.* at ¶ 36). Calvary and Defendants agreed to operate as a joint venture, sharing equally in all costs and expenses of developing the ceramic coating, and sharing equally in any profits from it. (*Id.* at ¶ 38).

### 4. *The ceramic coating is successfully developed*

By August 2021, without any meaningful input from Winters or Thor, Calvary further developed the ceramic coating and had a breakthrough adhering it to steel. (*Id.* at ¶ 40). That month, Calvary provided samples to Nucor, but the ceramic coating failed to cure properly. (*Id.* at ¶ 41). Jim and Berger communicated regarding a potential fix. (*Id.* at ¶ 41). Berger continued to make further modifications and ultimately succeeded in creating a formula that adhered to steel and withstood testing under extremely high temperatures. (*Id.* at ¶¶ 42, 43). Berger notified Nucor, and on September 1, 2021, Berger and Winters attended Nucor's test, which was a success. (*Id.* at ¶ 46).

For several weeks prior to the successful test, Thor had promised to prepare a more formal written agreement memorializing the joint venture between Thor and Calvary, but did not send one until October 20, 2021. (*Id.* at ¶¶ 47, 48). The draft agreement did not reflect what the parties had initially agreed, but instead misrepresented

4

Thor as the sole owner of the ceramic coating and relegated Calvary to the role of supplier. (*Id.* at ¶ 48). Upon Calvary's disapproval, Evan agreed to redraft, but never sent a revised agreement to Calvary. (*Id.* at ¶¶ 49-51). In the meantime, Winters made repeated requests to Berger to provide the revised formula that Berger had successfully developed. (*Id.* at ¶ 53).

### 5. *Calvary discovers Thor's patent application for a coating technology*

On September 19, 2022, Calvary learned that, on February 23, 2021, Thor had filed a provisional patent application for a coating technology that incorporated confidential and trade secret information developed by Calvary under the Agent Agreement. (*Id.* at ¶ 57). This provisional patent listed Winters as the sole inventor. (*Id.* at ¶ 57). The formula described in Thor's provisional patent is materially different from the formula for the ceramic coating that Calvary produced and that was successfully tested on Nucor's coil. (*Id.* at ¶ 57).

On October 20, 2022, the parties met in a final effort to memorialize the joint venture agreement. (*Id.* at ¶ 58). At this meeting, it became clear that Defendants intended to claim Calvary's intellectual property as their own. (*Id.* at ¶ 58). And, despite this dispute over ownership, Defendants were still attempting to contract with Nucor and/or Ford to sell or license the ceramic coating. (*Id.* at ¶ 59).

### B. Procedural Posture

Calvary initially filed suit against Defendants in the Southern District of Ohio on November 22, 2022. *See Calvary Industries, Inc. v. Winters et al.*, No. 1:22-cv-00686 (S.D. Ohio) (Dlott, J.) ("*Calvary I*"). In its complaint, Calvary brought a claim for

violation of federal law pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, among other state law claims. (*Calvary I*, Doc. 1). With respect to the patent applications, Calvary sought an order (i) requiring that the patent applications be corrected to add Chris Berger as a named inventor; (ii) declaring that Calvary is the true and lawful owner; and (iii) declaring that Calvary is the true and lawful owner of the technologies described in the complaint. (*Calvary I*, Doc. 1 at 28). Along with its complaint, Calvary filed a motion for temporary restraining order. (*Calvary I*, Doc. 3). On December 16, 2022, Defendants filed an opposition under seal. Calvary's reply was set to be due on December 30, 2022, but Calvary voluntarily dismissed the case on December 29, 2022. (*Calvary I*, Doc. 31). And, on that same day, Calvary refiled in the Butler County Court of Common Pleas. (Doc. 1-4).

On January 3, 2023, Defendants filed a notice of removal to this Court pursuant to 28 U.S.C. §§ 1338(a) and 1441, leading to the present action. (Doc. 1). Calvary's operative complaint is largely the same as its complaint in *Calvary I*, except Calvary removed all allegations citing federal subject matter jurisdiction and concerning its claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* (Doc. 2). Thus, Calvary moves to remand the action back to state court, arguing that only state law claims are present. (Docs. 10, 15). In response, Defendants maintain removal was proper, and that this Court may exercise jurisdiction over the action, because Calvary's claims still raise federal patent law issues. (Doc. 12).

## II. STANDARD OF REVIEW

On a motion for remand, the question is whether the district court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The party seeking removal bears the burden of establishing that removal was proper. *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000). Because removal raises significant federalism concerns, federal courts must strictly construe such jurisdiction. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). A federal court must resolve any doubt of its removal jurisdiction in favor of state court jurisdiction. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941).

Defendants remove this action pursuant to 28 U.S.C. §§ 1441 and 1338. Section 1441 provides generally that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the Unites States[.]" 28 U.S.C. § 1441(a). Section 1338 provides, in relevant part, that the "district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents[.]" 28 U.S.C. § 1338(a). Thus, the propriety of Defendants' section 1441 removal depends on whether Plaintiff's state law Complaint could be brought in federal court pursuant to § 1338, *i.e.*, whether Plaintiff's claims "aris[e] under" federal patent law.

For statutory purposes, a case can arise under federal patent law in two ways. *Gunn v. Minton*, 568 U.S. 251, 257 (2013). One, when federal law "creates the cause of action asserted." *Gunn*, 568 U.S. at 257. And two, even when only state law claims are

7

asserted, when a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 258 (applying test articulated in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005), to 28 U.S.C. § 1338(a)). The Supreme Court has explained that only a "special and small category" of cases would meet all four requirements. *Gunn*, 568 U.S. at 258.

### III.  CHOICE OF LAW[2]

As an initial matter, the Court must determine whether Sixth Circuit law or the law of the Federal Circuit applies to the question of whether the Court has subject matter jurisdiction pursuant to § 1338(a).

Federal Circuit law applies to "issues of substantive patent law" and to "procedural issue[s] . . . if the issue pertains to patent law, if it bears an essential relationship to matters committed to [the Federal Circuit's] exclusive [jurisdiction] by statute, or if it clearly implicates the jurisprudential responsibilities of [the Federal Circuit] in a field within its exclusive jurisdiction." *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed. Cir. 2000) (quoting *Midwest Indus., Inc. v. Karavan*, 175 F.3d 1356, 1359 (Fed. Cir. 1999) (*en banc* in relevant part) (internal citations and quotation marks omitted)). A "procedural question not unique to patent law" is governed by the law of the regional circuit. *Madey v. Duke Univ.*, 307 F.3d 1351, 1358 (Fed. Cir.

---

[2] Despite the importance of choice of law to the issues presented, neither party discussed the applicability of Federal Circuit law. Nonetheless, the Court deems it an issue worthy of discussion and has undertaken to analyze the propriety of applying Federal Circuit versus Sixth Circuit law to the issues.

8

2002) (citation omitted); *see, e.g., Info-Hold, Inc. v. Trusonic, Inc.*, No. 1:06CV543, 2008 WL 2949399, at *2 (S.D. Ohio July 30, 2008) (discussing choice of law as related to patent issues).

The Federal Circuit has repeatedly held that "[w]hether a civil action arises under an act of Congress related to patents necessarily presents an issue that is unique to patent law." *Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1311 (Fed. Cir. 2016) (citing *Midwest Indus., Inc.*, 175 F.3d at 1359); *see also Mars Inc. v. Kabushiki–Kaisha Nippon Conlux*, 24 F.3d 1368, 1371 (Fed. Cir. 1994) ("The issue whether the district court had jurisdiction [under § 1338] to hear Mars' claim of Japanese patent infringement is of importance to the development of the patent law and is clearly a matter that falls within the exclusive subject matter responsibility of this court." (internal quotation marks and citations omitted)); *Helfgott & Karas, P.C. v. Dickinson*, 209 F.3d 1328, 1333–34 (Fed. Cir. 2000) (explaining that whether an action arises under the scope of § 1338 presents a question that is unique to patent law); *Intellisoft, Ltd. v. Acer Am. Corp.*, 955 F.3d 927, 931 (Fed. Cir. 2020) (applying Federal Circuit law to determine whether the district court had § 1338 jurisdiction).

Accordingly, this Court applies Federal Circuit law to determine whether this Court has subject matter jurisdiction over Plaintiff's Complaint pursuant to § 1338(a).

## IV. ANALYSIS

### A. The Declaratory Judgment Claim (Count XIII)

Defendants argue that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a) "because [Plaintiff's] underlying declaratory judgment claim seek[s] a

9

judicial determination of correct patent inventorship[.]" (Doc. 12 at 2). Specifically, Defendants argue that Plaintiff seeks a determination that Berger is the inventor of the coating technology claimed in Thor's patent applications. (*Id.* at 4). Defendants point to, among other allegations in the Complaint, the following: (i) Plaintiff's allegation that "Calvary is entitled to judgment declaring it as the owner of the coating technology/ies with Mr. Berger as an inventor" (Doc. 2 at ¶ 129); and (ii) Plaintiff's prayer for relief, seeking an order "requiring that Thor [*sic*] amend its patent applications . . . to accurately reflect that Chris Berger [*sic*] is a named inventor" (*Id.* at 25). Thus, Defendants argue that inventorship is "at the heart of Calvary's claim" and that "[t]here is no way Calvary can prevail on its declaratory judgment claim without addressing the issue of inventorship." (Doc. 12 at 5).

Plaintiff argues that its Complaint "raises only state law claims." (Doc. 15 at 2). It does not, for example, "seek to have an existing patent undone; . . . claim that an existing patent has been infringed upon; . . . seek to have a patent rejected or accepted; [or] . . . allege a claim of patent infringement." (*Id.* at 3). Plaintiff "*merely* seeks to have [Thor] amend its patent application to reflect that one of Plaintiff's employees, Chris Berger, be named as co-inventor of the coating technology." (*Id.* at 3) (emphasis added and omitted). And, that any dispute regarding Berger's inventorship status "[is] ancillary and [does] not raise a substantial question of federal law such that subject matter jurisdiction before this court exists." (*Id.* at 1).

10

### 1. *Subject Matter Jurisdiction*

Plaintiff pleaded the request for declaratory judgment "pursuant to Ohio law" (Doc. 2 at ¶ 129 (citing Ohio Revised Code Chapter 2721)), seeking "judgment declaring it as the owner of the coating technology/ies with Mr. Berger as an inventor" (Doc. 2 at ¶ 129), and specifically requested that relief be granted by order "requiring that Thor [*sic*] amend its patent applications . . . to accurately reflect that Chris Berger [*sic*] is a named inventor" (*Id.* at 25).[3]

The Federal Circuit has treated "requests for declaratory relief relating to inventorship as functional equivalents of actions formally brought pursuant to § 256." *Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1325 (Fed. Cir. 2009) (citing cases); *see also Pappalardo v. Stevins*, 746 F. App'x. 971, 974 (Fed. Cir. 2018) (accepting state declaratory judgment claim as an action pursuant to 35 U.S.C. § 256 where the "true nature" of plaintiff's claim was for correction of inventorship in a patent application).

Here, in no uncertain terms, Plaintiff seeks a judicial determination that Berger is an inventor of the coating technology in Thor's patent applications and a corresponding order requiring Thor to correct the alleged inventorship error in the same. (Doc. 2 at 24-25). Thus, the "true nature" of Plaintiff's declaratory judgment claim is for relief

---

[3] As an initial matter, "the field of federal patent law preempts any state law that purports to define rights based on inventorship." *HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co.*, 600 F.3d 1347, 1352 (Fed. Cir. 2010) (quoting *Univ. of Colo Found. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed. Cir. 1999) ("An independent inventorship standard under state law would likely have different requirements and give rise to different remedies than federal patent law. A different state inventorship standard might grant property rights to an individual who would not qualify as an inventor under federal patent law, or might grant greater relief to inventors than is afforded by federal patent law. Either situation might frustrate the dual federal objectives of rewarding inventors and supplying uniform national patent law standards.")).

pursuant to federal law, specifically 35 U.S.C. § 256, and an action for correction of inventorship.

Accordingly, this Court has subject matter jurisdiction over Plaintiff's declaratory judgment claim pursuant to § 1338(a). *Larson*, 569 F.3d at 1324-25 (state declaratory judgment claim to correct inventorship in *issued patent* valid basis for federal jurisdiction pursuant to § 1338(a)); *Pappalardo*, 746 Fed. App'x. at 974 (state declaratory judgment claim to correct inventorship in *patent application* valid basis for federal jurisdiction pursuant to § 1338(a)). However, although the Court has subject matter jurisdiction over the declaratory judgment claim, to the extent Plaintiff seeks a correction of inventorship, the analysis of whether this case remains in federal court does not stop here.

### 2. *Private Right of Action*

"A § 256 claim for correction of inventorship does not accrue until the patent issues." *Pappalardo*, 746 F. App'x. at 974 (quoting *Hor v. Chu*, 699 F.3d 1331, 1335 (Fed. Cir. 2012)). Indeed, there are no private causes of action available to a litigant to challenge inventorship of a pending patent application. *See HIF Bio*, 600 F.3d at 1354-54 ("Congress . . . has limited the avenues by which such inventorship [of a pending patent application] can be contested" to "the Director of the [USPTO]"); *see also* 35 U.S.C. § 116.

As the parties recognize, the disputed patents have not yet issued. (Doc. 1 at 5; Doc. 2 at ¶ 128). The claim has not accrued and Plaintiff's declaratory judgment claim, to the extent it seeks correction of inventorship, must be dismissed with prejudice pursuant to Rule 12(b)(6). *See HIF Bio*, 600 F.3d at 1354 (holding claim for correction

of inventorship on a pending patent application should be dismissed under Rule 12(b)(6)); *Pappalardo*, 746 F. App'x. at 974 (vacating with instructions to dismiss unaccrued claim with prejudice); *Halpern v. PeriTec Bioscis., Ltd.*, 383 F. App'x 943, 947 (Fed. Cir. 2010) (affirming Rule 12(b)(6) dismissal because "an inventorship claim involving pending patent applications raises a question of federal patent law, but does not give rise to a private right of action that can be pursued in a district court" (citation omitted)). And, should a patent issue from Thor's patent applications, nothing prevents Plaintiff from seeking declaratory judgment relief on a correction of inventorship at that time. *See Hor*, 699 F.3d at 1336 ("Nothing in the plain language of § 256 or the accompanying regulations indicates that the failure to challenge inventorship before the PTO can potentially bar an inventor from later contesting inventorship under § 256.").

Accordingly, Plaintiff's declaratory judgment claim is dismissed with prejudice to the extent that it seeks correction of inventorship errors in Thor's pending patent applications.

### B. The Supplemental State Law Claims (Counts I-XII)

Plaintiff's remaining claims are state law claims for breach of contract (Counts I, II, VII, VIII), misappropriation of trade secrets (Counts III, IV), tortious interference (Counts V, VI), conversion (Counts IX, X), civil conspiracy (Count XI), and unjust enrichment (Count XII). (Doc. 2 at 14-24). The parties do not dispute that these claims could be resolved without reliance on federal patent law. Instead, Defendants—as if by premonition—argue that this Court should retain jurisdiction over pendant state law claims, "even if the federal claim is later dismissed." (Doc. 12 at 12-15).

13

In determining whether to retain jurisdiction over state law claims, a district court should consider and weigh several factors, including the "values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). A district court may also "consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand a case. If the plaintiff has attempted to manipulate the forum, the court should take this behavior into account" in determining whether the balance of factors supports a remand of the state law claims. *Carnegie-Mellon*, 484 U.S. at 357. Exercise of that authority is generally discouraged where, as here, the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed.") (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)).

Defendants urge this Court to retain jurisdiction for three reasons, none of which the Court finds availing. First, Defendants argue that they have asserted federal counterclaims pursuant to 28 U.S.C. § 1331. (Doc. 12 at 14). But, as Defendants very well know, federal question jurisdiction under § 1331 is proper "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). And, "it is well settled that federal counterclaims and defenses are inadequate to confer federal jurisdiction." *Chase*

14

*Manhattan Mortg. Corp. v. Smith*, 507 F.3d 910, 914-15 (6th Cir. 2007) (internal quotations omitted). So, the counterclaims cannot convey jurisdiction.

Second, Defendants argue that Thor's patent applications will inevitably still be part of the case. (Doc. 12 at 14-15). But, despite Defendants' urging that issues of patent law are imbedded in Plaintiff's Complaint, Defendants do not attempt to demonstrate that any of Plaintiff's remaining state law claims "aris[e] under" federal patent law. *Gunn*, 568 U.S. at 257. So, the Court does not consider that either.

Finally, Defendants argue that Plaintiff has engaged in improper forum manipulation. (Doc. 12 at 15). But, the plaintiff is the master of its complaint and "is not required to pursue theories it has not prepared and does not wish to pursue." *Innovation Ventures, LLC v. Custom Nutrition Lab'ys*, LLC, 912 F.3d 316, 331 (6th Cir. 2018). Plaintiff voluntarily dismissed *Calvary I* in the early stages, before any ruling on its motion for temporary restraining order, and refiled in state court the same day. There is no forum manipulation and none of the *Carnegie-Mellon* factors weigh in favor of exercising supplemental jurisdiction over Plaintiff's remaining state law claims.

Accordingly, the Court remands Plaintiff's remaining state law claims to the State Court from which they were removed.

### C. Attorneys' Fees and Costs

The final issue to resolve is Plaintiff's request for attorney fees related to the motion to remand. (Doc. 10 at 10-12). When a district court grants a motion to remand, it may "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The standard for awarding

fees and costs after remanding a removed case "should turn on the reasonableness of the removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Courts may award attorney's fees under § 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal." *Id*. Conversely, "when an objectively reasonable basis exists, fees should be denied." *Id*.

The Court finds that Plaintiff is not entitled to fees and costs incurred with the motion to remand. Defendants' basis for removal was not objectively unreasonable. Indeed, the Court found it had subject matter jurisdiction over Plaintiff's declaratory judgment claim pursuant to 28 U.S.C. § 1338(a). No costs or fees will be rewarded.

## V. CONCLUSION

Based upon the foregoing, Plaintiff Calvary Industries, Inc.'s declaratory judgment claim is **DISMISSED WITH PREJUDICE** to the extent that it seeks judgment declaring Chris Berger as an inventor of Thor's pending patent applications. Plaintiff's motion to remand (Doc. 10) is **GRANTED** with respect to the remaining state law claims. The remaining state law claims are **REMANDED** to the State Court (the Butler County Court of Common Pleas) from which they were removed. The parties shall bear their own costs and fees. The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED.**

Date: 1/30/2023

*s/Timothy S. Black*
Timothy S. Black
United States District Judge